### DALLAS OIL & REFINING CO. v. CARTER.

(Court of Civil Appeals of Texas. Jan. 21, 1911. Rehearing Denied Feb. 11, 1911.)

1. MASTER AND SERVANT (§ 291*)—INJURIES—INSTRUCTIONS—REQUEST—CAUSE OF ACCIDENT.

Where, in a stationary engineer's action against his employer for injuries claimed to have been caused by slipping on oil, which had been negligently permitted to run down onto the floor from the engine, there was evidence that plaintiff was injured by catching his clothes in the machinery, and not by slipping on the floor, it was error to refuse a requested charge by defendant that, unless the jury believed that plaintiff slipped and fell, causing the injuries as alleged, they should find for defendant.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 291.*]

2. MASTER AND SERVANT (§ 154*)—MASTER'S DUTY—WARNING OF DANGER.

Where an employer promised his stationary engineer at the close of the workday on Saturday to remedy a defective condition in the engine room made by the dripping of oil onto the floor, the employer was not bound to warn the engineer when he went to work on the next Monday morning of. the dangerous condition created by the oil on the floor, in addition to the fact that the oil was still there; the engineer being familiar with the danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 308, 309; Dec. Dig. § 154.*]

3. MASTER AND SERVANT (§ 270*)—INJURIES—ACTIONS—ADMISSION OF EVIDENCE.

In an action for personal injuries to an employé, by falling into machinery because of the slippery condition of the floor, evidence that, after plaintiff was injured, his superintendent directed a platform to be built, to prevent others from falling where plaintiff fell and was injured, was not admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 918; Dec. Dig. § 270.*]

4. DAMAGES (§ 143*)—PERSONAL INJURIES—PLEADING AND PROOF.

The petition in an action for personal injuries must allege the particular consequences of the injuries, in order to admit evidence there-

of, if such consequences do not naturally and necessarily result from the injuries alleged.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 410; Dec. Dig. § 143.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by R. M. Carter against the Dallas Oil & Refining Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

G. D. Hunt, Thomas & Rhea, and Spence, Knight, Baker & Harris, for appellant. Geo. H. Plowman, W. J. J. Smith, and Jno. C. Robertson, for appellee.

TALBOT, J. Appellee, Carter, brought this suit against the appellant, Dallas Oil & Refining Company, to recover damages for personal injuries alleged to have been sustained by him through the negligence of appellant. The plaintiff alleges that he was serving defendant in the capacity of engineer in charge of certain stationary engines; that through the negligence of defendant lubricating oil, placed upon engines in a part of the establishment other than that under the care of plaintiff, was permitted to run down on the floor of the room where plaintiff was at work, causing the floor to be slippery and dangerous; that plaintiff complained to the vice principal of defendant, and a promise to repair was given him; that the promised repairs were not made, yet, notwithstanding this, defendant negligently failed to warn plaintiff of the failure to make repairs, and that thereafter, while working about the engines under his charge, plaintiff slipped in a pool of oil that had been allowed to collect on the floor, and in falling against one of the machines in motion sustained the injuries of which he complains. The defendant pleaded a general denial, assumed risk, contributory negligence, and that the injury resulted from plaintiff's permitting his sleeve to come in contact with the machinery in such a manner as to cause his hand to be caught and injured. A jury trial resulted in a verdict and judgment in favor of the plaintiff for $8,000, and the defendant appealed.

The first assignment of error complains that the court erred in refusing to give appellant's special requested instruction No. 2, which is as follows: "Unless you believe from a preponderance of the evidence that the plaintiff slipped and fell, and the accident resulted therefrom as alleged by him, you should not consider any other issue submitted to you, but return a verdict for the defendant." "The proposition under this assignment is that, where the evidence offered by the defendant in a suit for personal injuries negatives the theory of the case alleged by plaintiff and testified to by him and his witnesses, the defendant is entitled to have given a requested charge, affirmatively

submitting to the jury the negative of the sole theory urged by plaintiff, where such negative is not submitted in any other charges given by the court to the jury." That this proposition embodies a correct statement of the law is affirmed by many decisions of the appellate courts of this state, and that it should have been given in this case admits of no doubt in our opinion. As is insisted by appellant, "one of the most serious controversies in the case concerned the circumstances of the accident; the plaintiff contending that he slipped and fell, as a result of oil on the floor, the defendant contending that he did not slip and fall, as alleged by him, but was hurt while standing on the foundation block of one of the engines trying to oil same. In the second paragraph of the general charge, the court instructed the jury to the effect that, if the plaintiff was in the employ of the defendant as its engineer, and that, while so employed, oil was placed on a pulley overhead in an adjoining room to where plaintiff was working and was allowed to run down a post extending from the said room to the place where the plaintiff was required to work, that plaintiff called the attention of the defendant to the danger and unsafety of said place, and that defendant promised to remedy said dangerous conditions, and would prevent the oil from running down on the floor; * * * and if they further found that on the next workday after making said promise oil was permitted to run down from said pulley on the post onto the floor where the plaintiff worked, causing plaintiff to fall and receive the injuries complained of, etc., * * * to find for the plaintiff." This was the only charge given by the court on the issue as to the manner in which the accident and injury to plaintiff occurred. Neither in the general charge, nor by a special charge, did the court submit to the jury affirmatively the negative side of the issue as to whether the plaintiff was injured in the manner alleged by him, nor did the court submit in any way the plaintiff's theory as to how the accident happened, or tell them that, if the plaintiff was hurt while standing on the foundation block of the engine, trying to oil the engine as charged by the defendant, he could not recover.

The plaintiff, among other things, testified: "I had to go between that pulley block and oil the engine. The oil ran down that post on the floor, right between the wall and the pulley block. I slipped and fell, and, to keep from going into that big wheel that turns across that little idler in there, in front of me, I grabbed the pulley block to prevent from falling over in that wheel, and it swung me around and swung my arm over the eccentric and on top of that other. There was a plain oil cup, and I had on a heavy sateen shirt, and that shirt caught in that oil cup, and just allowed my hands and fingers to get over in there. If I had not caught there, it would have crushed my whole body. I would have fallen right in sideways, and it would have caught my arm and shoulders, but it just caught my hand and fingers, and I snatched my hand back, and I did not know what was the cause of the fall, but looked around to see, and this oil had run down that post and was on the floor, and I had slipped in it. The oil on the floor made the floor slippery. It covered a space about the size of your hat, or a little larger. It was not very thick. I could not say just how thick it was; but it was in a sort of pool. It just ran down around there and spread out like a pool. The thing the engine rested on was a pedestal, and behind that there was a place where the floor was [speaking of the pedestal foundation of the engines]. This foundation was there at the time. In getting up to the oil cups, I would step up to where I could reach them better. I did not tell him [Mr. Kimbrough, the vice principal] that I was attempting to regulate that feeder and the top of the cup caught my sleeve and jerked my hand into that eccentric."

On the other hand, the witness Harrison testified: "About a year or so ago Mr. Carter got hurt out there, and at that time I was standing at that window, the one next to the engine room, leaning over in the window. Mr. Carter came around by me as I was standing there, and said something—I don't know what it was—but he went on to oil the engine there, and I turned my head and was looking at the pressroom, and Carter passed back by me—I know where that engine is situated, and the window that I speak of is right at that engine. The base of the engine is a cement foundation, and he passed right by it and came back by it, and he passed right along to oil the engine and the eccentric and bearings; but as he went he did not slip or fall. I never asked him to make any statement at that time, but heard him make an expression. He said, 'I caught my sleeve on the eccentric,' but I don't remember who it was he was talking to or who asked him about it. When he told whoever it was about the accident he did not say anything about slipping or falling. When I was in the window, Carter came around there, and before I had looked away he had passed the point where the oil came through, and after he had stepped up on the base of the engine, I turned my head and looked into the pressroom." Kimbrough, superintendent and vice principal of the defendant, testified: "I asked him [plaintiff] how he got hurt, and he said his sleeve got caught in the eccentric cup and jerked his hand into the eccentric. He did not say anythng to me at that time about either falling or slipping. He said the cup was stopped up and he was adjusting it to make it feed properly." Crane, a witness for the defendant, testified: "The first time I saw Mr. Carter after the accident I saw him in the pressroom, while he was lying

down. He told me at that time that a cup on the eccentric caught his sleeve and jerked his hand into the eccentric. I did not hear him say anything at that time about slipping or falling."

The special charge under consideration presented affirmatively the negative of the issue submitted by the court's charge, and having been requested, its refusal, in view of the testimony, was clearly error. Dallas Con. Elec. St. Ry. Co. v. Conn., 100 S. W. 1019; Dallas Con. Elec. St. Ry. Co. v. Mc-Grew, 115 S. W. 344; Railway Co. v. Ayres, 83 Tex. 268, 18 S. W. 684; Railway Co. v. Johnson, 100 Tex. 237, 97 S. W. 1039; Northern Texas Traction Co. v. Moberly, 109 S. W. 483.

The case of Railway Co. v. Ayres, supra, was a suit, like the present, for damages for personal injuries, and it was an issue in the case whether the injuries proved were permanent. The railway company requested a charge that, "unless it was shown affirmatively by a fair preponderance of the evidence that the plaintiff's injuries are of a permanent character, you will disallow his claim for injuries of that character." The refusal of this charge was held to be error, the court saying: "Had no additional instruction been requested upon the point, the charge of the court would have perhaps been deemed sufficient; but as the evidence was conflicting, it was the sole province of the jury to determine whether or not the probable effects of the injuries would be to impair the proper or natural use of plaintiff's neck and shoulder in the future, and the defendant was consequently entitled to an affirmative presentation by instructions to the jury of the negative side of the question." In the case of Railway Co. v. Johnson, 100 Tex. 237, 97 S. W. 1039, the negligence alleged consisted in the porter moving the stool placed for passengers to step on in alighting from the train, and there was evidence that it was not moved, but that the plaintiff stumbled in getting down the steps, and the Supreme Court held that the railway company was entitled to have a requested charge given that plaintiff could not recover, unless moving the stool was the cause of his fall. Chief Justice Gaines said: "Now the plaintiff having predicated his case upon the negligence of the porter in removing the stool just as he was stepping from the car, he could recover only by proving the facts as alleged. The negligence of the porter in that respect was put in issue by the general denial, and under the circumstances of the case we think that the defendant was entitled to have the jury affirmatively instructed that, if the moving of the stool was not the cause of the accident, it was entitled to a verdict." Excerpts from other cases illustrating the rule might be given, but we deem it unnecessary. The charge upon the question of contributory negligence requested by the defendant, and giv-

en by the court, was not equivalent to the special charge in question.

Appellant's second assignment of error complains of the second paragraph of the court's charge, which, among other things, tells the jury, in substance, that if the plaintiff called the defendant's attention to the danger of the place where he was directed to work, and defendant promised to remedy the dangerous condition thereof and failed to do so, and oil was permitted the next workday after such promise to run down the post onto the floor where plaintiff worked and caused plaintiff to fall and receive the injuries of which he complains, and that defendant failed to warn the plaintiff that the repairs had not been made, and of the dangers of the situation in which plaintiff was placed, and if the failure to warn the plaintiff was the proximate cause of plaintiff receiving the injuries complained of, and that in failing to warn the plaintiff of the dangers of the situation in which he was placed at the time of the accident, etc., to find for the plaintiff. Several objections are urged to this paragraph of the charge, but the only very serious one we think is contained in the fifth proposition, which is as follows: "Even where the master has, upon the complaint of the servant, promised to repair conditions claimed to be dangerous, the failure to make the promised repairs, and the further failure to give warning that they have not been made, does not impose upon the master the additional duty of warning the servant of the dangers of his employment, especially where the servant is a mature, experienced man, fully cognizant of all conditions and dangers incident to the state of nonrepair complained of." It will be observed that the charge here referred to not only imposed upon the defendant the duty to warn plaintiff of its failure to make the promised repairs, but also of the dangers of the place promised to be repaired. If it be conceded that, having failed to make the repairs, it was the defendant's duty to have notified the plaintiff of that fact before he went to work on Monday following the promise to repair, still, under the facts of the case, it was not the duty of the defendant to have warned the plaintiff of the dangers of the place, and the instruction to that effect was material error. The evidence shows that the alleged promise to repair, if made, was made about the close of business on Saturday, and that the accident occurred on the following Monday morning; that the plaintiff knew full well the dangers attending the presence of oil on the floor where he was required to work, and that, unless it had been removed, the place on Monday morning, when he returned to work, was still dangerous. Under such circumstances, it was not the duty of the defendant to warn him that the repairs had not been made, and also of the dangers of the situation in which he was placed. That

the effect of the charge was to impose such duty, and that to so do was an affirmative misdirection of the jury, seems very clear. In other respects, we think the charge is free from reversible error.

The sixth assignment of error complains of the court's action in admitting in evidence, over the defendant's objection, that portion of a written statement purporting to be signed by the witness, John Holt, with reference to a statement made by the defendant's superintendent as to the platform at the place where plaintiff claimed to have been hurt, and in allowing the jury in their retirement to take said statement with them. The objectionable matter in the statement is as follows: "Then [meaning after the plaintiff was hurt] superintendent told me [John Holt] to build a platform to prevent a man falling where Carter [the plaintiff] fell." It is well settled, as contended by appellant, that in a suit for personal injuries to an employé, predicated upon the alleged negligence of the employer in not furnishing a safe place to work, evidence of substantial repairs at the place where the plaintiff was working, and in which he claims the defects resulting in his injury existed, is inadmissible. In this instance, however, it appears that a part of the written statement in question was admissible for the purpose of contradicting or impeaching the witness Holt, and the consideration of the statement by the jury was expressly limited by the court's charge to that purpose, and the jury told that it was not "evidence of the facts therein stated." The consideration of the statement being thus restricted, it may be that its admission does not constitute reversible error, but in view of another trial we think it proper to say that, should the question again arise, the defendant's rights would be much better guarded and protected, and no injury suffered by the plaintiff, if only so much of the statement as tends to impeach the witness be allowed read to the jury, and the objectionable portion thereof wholly excluded. It does not occur to us that it was necessary, as we understand counsel for the plaintiff to argue, for the statement to be before the jury while deliberating upon their verdict, in order for them to determine, by comparison of the signature to the statement with the known handwriting of the witness Holt, whether said statement was genuine.

Appellant's ninth, tenth, and eleventh assignments are grouped, and are to the effect that the court erred in permitting the plaintiff and Dr. McIver to testify, over objection of the defendant, with reference to the wound and ulcer on plaintiff's right arm and the surgical operation thereon, and the consequences resulting to plaintiff's arm by reason thereof; and that the court erred in refusing to charge the jury, at defendant's request, that if they should find for plaintiff, then, in estimating the compensation to which he was entitled, they should not consider injury to plaintiff's arm. We are inclined to think these assignments, under the pleadings, are well taken. Plaintiff alleged, regarding his injuries, that "his hand was caught between the iron cogs and in the powerful and dangerous machinery of the defendant, and his right hand was lacerated and torn, and he was greatly bruised and wounded in divers places on his body, and caused to suffer severe physical pain and mental anguish, and was compelled to employ doctors and undergo a surgical operation, whereby he lost all the fingers of his right hand, and was greatly injured and permanently injured and rendered a cripple for life; that defendant failed and refused to perform its duty to plaintiff, whereby he was injured for life as aforesaid, and caused to suffer and will continue to suffer during the remainder of his natural life." The testimony of the plaintiff objected to was to the effect that the doctors split his arm from his wrist to a point up near his elbow and run a gauze through it, and that his arm was practically destroyed. That of Dr. McIver was substantially as follows: "We performed two operations; the second one was to his [plaintiff's] arm, where we had to put in a tube, because he had blood poison, which had progressed up there from the hand. We put him under the influence of chloroform to do that." The defendant objected to the testimony relating to the second operation and relating to the injury to the arm, and to the effect of the injury to the arm, because the allegations of the plaintiff's petition did not justify such proof, there being no allegation of injury to the arm and no allegations of the described effects of the injury to plaintiff; and, further, because it appears that the effect of the injury to the arm resulted from septic poisoning.

It is well settled in this state that to admit proof of damages which do not naturally and necessarily result from the injury alleged, the petition must set up the particular effects or consequences claimed to have followed the injury. Campbell v. Cook, 86 Tex. 632, 26 S. W. 486, 40 Am. St. Rep. 878; Railway Company v. Linton, 109 S. W. 942. The difficulty experienced by the courts is not in determining what the general rule is upon this subject, but in its application to the particular facts of the case before them. In this case, however, we are inclined to the opinion that the septic or blood poison shown to have developed in plaintiff's arm, and the operation made necessary on account thereof cannot be said to be natural and necessary consequences of the alleged injury to plaintiff's hand, and, there being no allegation in the petition that plaintiff's arm was so affected, and this operation necessary, as a result of the alleged injury to his hand, or of any other injury alleged, the admission of the testimony complained of was error. But if we are mistaken in this view of the mat-

ter, then, as the case will be reversed and remanded on other errors, the question can and should be eliminated by an amendment of plaintiff's petition.

The twelfth assignment of error complains of the court's charge on the measure of damages, with reference to the time lost by plaintiff as a result of his injuries. The plaintiff pleaded physical and mental suffering as a consequence of the injuries alleged, and that because of said injuries he was confined to his home for four months, etc. This is the only allegation of lost time found in the petition. Plaintiff testified: "I was confined to my room 120 days, and was confined to my bed pretty nearly that length of time. After I was confined to my bed that 120 days, it was a long time before I was able to go back to my work. I don't know exactly what length of time, but it was several months. At the time I was injured, I was getting $2 per day." The charge authorized a recovery for all time lost from labor in the past. This, in view of plaintiff's pleading, limiting the time lost by him as a result of his injuries to four months "in the past," and his testimony to the effect that it was a long time—several months—after the four months' confinement to his room before he was able to go back to work, permitted a recovery for disability and lost time in the past in excess of his allegations, and was affirmative error.

There are other assignments of error, but they need not be discussed. None of them disclose reversible error, and they will be overruled.

For the errors indicated, the judgment of the court below is reversed, and the cause remanded.